**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| DARRYL KINNEY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-2522 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 5, 8–14, 17–20, |
| | : | | 24, 26, 28 |
| | : | | |
| UNITED STATES OF AMERICA, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT; GRANTING DEFENDANT'S MOTION
TO EXTEND *NUNC PRO TUNC* TIME TO FILE; GRANTING DEFENDANT'S MOTION TO DISMISS;
DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

## I. INTRODUCTION

In August 2025, Plaintiff Darryl Kinney, appearing *pro se*, filed suit against the United

States, claiming that government personnel have pursued him and caused him misfortune for

over twenty years. He asserts that government agents pose as his neighbors or customers at his

places of employment, threatened his wife to divorce him, and that these agents routinely follow

him into bathrooms.  Mr. Kinney theorizes that this government campaign against him began

because he reported two federal judges in Chicago over twenty years ago.  According to Mr.

Kinney, he suffers from severe emotional distress, nightmares, and loss of income because

government personnel constantly stalk him.  Mr. Kinney requests over $6 billion in

compensatory and punitive damages and has filed various motions, including a motion for

default.  In December 2025, the Government filed its motion to dismiss for lack of subject matter

jurisdiction, arguing that Mr. Kinney's Complaint is patently insubstantial and presents no

federal question suitable for review.  Almost three months later, Mr. Kinney filed an Amended

Complaint re-iterating many of his original claims and allegations.  The Government then filed a motion to strike the Amended Complaint as untimely, or in the alternative, as futile because it also presents no suitable question for review.  For the reasons stated below, the Court will deny Mr. Kinney's motion for default judgment, grant the Government's motion to dismiss, and decline to give Mr. Kinney leave to file an Amended Complaint.  Accordingly, the Court denies as moot the Government's motion to strike and Mr. Kinney's other, outstanding motions.

## II.  FACTUAL BACKGROUND

Mr. Kinney's claims are brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*  He alleges the existence of a vast government conspiracy involving federal agencies and military personnel, all of whom harass him.  Mr. Kinney claims that for the past twenty years, military and government personnel have pursued him into public bathrooms, spread rumors to sabotage his employment, and manipulated his federal suits.  Compl. at 2–3, 6, ECF No. 1.  According to Mr. Kinney, these incidents have occurred across many states, including Georgia, North Carolina, Virginia, Washington, D.C., and California.  *Id.* at 5.  In the Complaint, Mr. Kinney asserts three counts against the Government.

## A.  Count I for Assault

Mr. Kinney alleges that, on or about July 18, 2025, in Ashburn, Virginia, the Government placed him "in reasonable apprehension of imminent harmful or offensive contact" by hacking his Wi-Fi and distorting his emails, preventing him from finding better employment opportunities.  Compl. at 2, 6–7.  As proof of such hacking, Mr. Kinney attaches to his Complaint an October 2008 police report, which indicates that at the Great Lakes Naval Station in Illinois, Mr. Kinney called the authorities to report he was harassed.  Compl. Attachments ("Attachs.") at 40 (numbers designated by the Court), ECF No. 1-1.  The responding officers

reported that the "complaint of harassment was not a criminal matter, and no crime was committed." *Id.* As further proof, Mr. Kinney also attaches three messages from Xfinity, which informed him that he experienced "network performance issue[s]" on three different occasions in 2025. *Id.* at 37–39. Mr. Kinney also claims that the Government uses "community residents to harass and follow [him] daily" by providing his "GPS" to these actors, as well as to potential criminals. Compl. at 2.

### B. Count II for Battery

Mr. Kinney appears to allege "privacy violations." *Id.* at 6–7. He alleges that military personnel vandalized three of his vehicles, which he believes constitutes a "government hate crime." *Id.* at 2. Mr. Kinney claims that, while he stayed at a hotel overnight, military personnel removed his first car's brake pads, cut the second car's steering and brake lines, and "locked up" the third car's engine. *Id.*

### C. Count III for Intentional Infliction of Emotional Distress ("IIED")

Drawing from Counts I, II, and IV (below), Mr. Kinney states that these events have caused him severe emotional distress. Compl. at 2. Mr. Kinney claims he suffers from "nightmares, flashbacks, [and] severe anxiety," and is distrustful because of rumors spread about him at his workplace. *Id.* Mr. Kinney also claims that, when he "goes to a public toilet," four or more military personnel follow him and confess that they are paid to do so. *Id.* Within his IIED claim, Mr. Kinney alleges that the Chief of Police for Waukegan, Illinois admitted to him that "it was the military from Great Lakes military base" that was stalking him, and that local detectives were aware of this fact. *Id.*

### D.  Count IV for False Imprisonment

Mr. Kinney next alleges that the government has "[p]hysically prevent[ed] [him] from leaving a certain area." *Id.* at 3. In particular, he claims that an officer told him that the "Feds" follow him "from state to state with Military . . . using DOJ [and] [g]reen card recipients to attempt thefts or car accidents." *Id.* He further alleges that this "continual stalking group of government agents" constitutes a "20-year border jumping ring of Police and Federal employees overstepping their authorities." *Id.*

### E.  Other Claims

Along with Mr. Kinney's four counts, he cites a multitude of other disjointed incidents. For example, Mr. Kinney claims that the Government threatened his ex-wife "into 3 faked divorce[s]" and kept his son from him as "blackmail and extortion." *Id.* at 3–4. He also claims that the Government turned his friends and associates against him and has attempted to murder him by damaging his vehicles. *Id.* at 4. Within Mr. Kinney's attachments, he includes several self-initiated police reports. In one report, Mr. Kinney contacted the authorities because his tire was punctured, telling officers he suspected that the Internal Revenue Service and the Department of Justice were at fault. Attachs. at 32. In the same report, Mr. Kinney states that after he leaves work at 3:00 AM, roughly 50 to 200 vehicles follow him. *Id.*

### F.  Procedural Background

In August 2025, Mr. Kinney filed the instant Complaint against the Government, requesting compensatory and punitive damages. Compl. at 8. In September 2025, Mr. Kinney filed a motion for default judgment requesting over $6 billion in damages. Pl.'s Mot. Default J., ECF No. 5. On December 10, 2025, the Government filed its motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, contending that the Complaint presents no federal

4

question suitable for decision.  Gov't's Mot Dismiss, ECF No. 13.  In its motion to dismiss, the Government also argued that Mr. Kinney's motion for default judgment was premature because the Federal Rules of Civil Procedure give the United States 60 days to respond—instead of the standard 21 days—and because this deadline was further extended by Standing Order No. 25-59 (Nov. 13, 2025).[1]  *Id.* at 5 (citing Fed. R. Civ. P. 12(a)(2)).  On January 21, 2026, Mr. Kinney filed a response to the motion to dismiss but did not address the Government's arguments.  *See* Pl.'s Resp. to Mot. Dismiss, ECF No. 16.  Rather, in his response, Mr. Kinney requested court-appointed counsel.  *Id.*  On February 27, 2026, Mr. Kinney filed an Amended Complaint, asserting similar, vague claims of government misconduct and requesting over $20 million in damages.  Am. Compl. at 4–5, ECF No. 19.  On March 13, 2026, the Government filed its motion to strike the Amended Complaint as untimely, observing that it was filed after the twenty-one-day deadline and without leave of the Court.  Gov't's Mot. Strike Am. Compl. ("Mot. Strike") at 2, ECF No. 20.  Then, Mr. Kinney filed his response opposing the motion to strike.  Pl.'s Opp'n to Mot. Strike, ECF No. 21-1.  The motions are now ripe for this Court's consideration.

## III.  LEGAL STANDARD

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation modified).  Even so, *pro se* litigants must still comply with the Federal Rules of Civil Procedure. *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).  Federal courts have "limited jurisdiction," and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

---

[1] The Government simultaneously moved to extend *nunc pro tunc* its time to respond to Plaintiff's motion for default judgment, which the Court now grants. *See* Gov't's Mot. to Extend Time, ECF No. 12.

U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), "plaintiffs bear the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004). With a Rule 12(b)(1) motion to dismiss, the court will "assume the truth of all material factual allegations" and "grant[] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation modified).

## IV. ANALYSIS

### A. Plaintiff's Motion for Default Judgment

The Court first addresses Mr. Kinney's motion for default judgment. Mr. Kinney asserts that the Government failed to respond to his Complaint within the allotted time provided by the Federal Rules of Civil Procedure. *See* Pl.'s Mot. Default J. at 1, ECF No. 5. However, at the time Mr. Kinney filed his motion, appropriations had lapsed, that is, the Government had been "shut down." Per Standing Order No. 25-59 (Nov. 13, 2025), the Government's litigation deadlines in certain cases in this District, including this one, were automatically extended by fifty-three days. Accordingly, the Government's deadline to respond to Mr. Kinney's Complaint was December 12, 2025. On December 10, 2025, the Government so responded. Therefore, at the time Mr. Kinney filed his motion, the Government had not, in fact, defaulted. The Court thus denies Mr. Kinney's motion for default judgment.

### B. Government's Motion to Dismiss

Now, the Court turns to the Government's motion to dismiss. In his Complaint, Mr. Kinney asserts the existence of a government campaign to constantly stalk and surveil him. Mr. Kinney asserts various FTCA claims and alleges a twenty-year-long government conspiracy in

6

which covert agents stalk and surveil him, try to kill him, interfere with his employment prospects, and turn his friends and family against him.  The Government asserts that such allegations are patently insubstantial and present no suitable question for judicial review.  The Court agrees and grants the Government's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.

A complaint may be dismissed when it "is 'patently insubstantial,' presenting no federal question suitable for decision."  *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)).  A complaint is "patently insubstantial" if the allegations are "essentially fictitious," *id.*, or "wholly insubstantial or frivolous," *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 232 (D.D.C. 2007) (citation modified). Accordingly, complaints that contain "bizarre conspiracy theories" and allegations of "fantastic government manipulations" are dismissible for lack of subject matter jurisdiction.  *See Best*, 39 F.3d at 330; *see also Walsh v. Comey*, 118 F. Supp. 3d 22, 25–27 (D.D.C. 2015) (collecting cases and dismissing a *pro se* plaintiff's complaint alleging that, for over twenty years, a government conspiracy targeted and spied on plaintiff); *Bickford v. Gov't of United States*, 808 F. Supp. 2d 175, 177–78 (D.D.C. 2011) (dismissing claims of a government conspiracy in which agents surveil and harass plaintiff and her minor child, intercept her mail, and discredit her in the community).

Here, Mr. Kinney's claims amount to a "bizarre conspiracy theor[y]" that is "essentially fictitious" and warrants dismissal.  *Best*, 29 F.3d at 330 (citation modified). As noted, Mr. Kinney alleges that the U.S. government has embarked on a decades-long campaign against him in which government agents—including Mr. Kinney's neighbors, coworkers, and customers at his workplace— take actions to impede his life.  *See* Compl. at 3–5.  Moreover, Mr. Kinney's

allegations that clandestine government agents routinely surveil him, but also confess their crimes to him, *see* Compl. at 2–3, 5, shifts the Complaint into a "realm of claims flimsier than doubtful or questionable—essentially fictitious," *see Tooley*, 586 F.3d at 1009 (citation modified). Therefore, the Court grants the Government's motion to dismiss Mr. Kinney's Complaint as it presents no suitable federal question for judicial review.

### C.  Mr. Kinney's Amended Complaint

Lastly, the Court turns to Mr. Kinney's Amended Complaint. Under Federal Rule of Civil Procedure 15(a), a party may amend its complaint "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b)."  Fed. R. Civ. P. 15(a)(1)(B).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  *Id.* at 15(a)(2). Here, the Government filed its motion to dismiss on December 10, 2025.  *See* Gov't's Mot. Dismiss.  Mr. Kinney's last opportunity to amend his Complaint as of right was twenty-one days later, on December 31, 2025. *See* Fed. R. Civ. P. 15(a)(1)(B).  Mr. Kinney, however, filed his Amended Complaint on February 27, 2026, seventy-nine days after the Government filed its dispositive motion. *See* Am. Compl. Therefore, Mr. Kinney was required to seek leave from the Court prior to filing his Amended Complaint. Nevertheless, courts must construe *pro se* filings liberally. *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). The Court therefore interprets Mr. Kinney's filing of the Amended Complaint as a necessary motion to amend the Complaint pursuant to Federal Rule of Civil Procedure 15, and it denies the motion.

Amendment would be futile. *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (explaining that denial of leave to amend is proper when amendment would be futile). An amendment is futile if it "merely restates the same facts as the original complaint in different

terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." *Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, 678 F. Supp. 3d 62, 69 (D.D.C. 2023) (quoting *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012)). Indeed, the Amended Complaint is similar to Mr. Kinney's original, deficient Complaint.

The Amended Complaint, like the original Complaint, alleges a bizarre government conspiracy. Mr. Kinney again claims to have suffered "systemic, coordinated surveillance and psychological harassment" after he reported certain named judges to "Ex Vice President Dick Ch[e]ney and Chicago FBI" because those judges "were going to get him with every resource they had." Am. Compl. at 2. He realleges that government agents stalk him and spread rumors to discredit him. *Id.* at 4–5; Compl. at 2, 4. He maintains that his phones have been illegally wiretapped and that the Government has used "immigrants who have green cards" to harass him. Am. Compl. at 4.

Therefore, the Amended Complaint would warrant dismissal for lack of subject matter jurisdiction because it, too, is patently insubstantial and presents no suitable federal question for review. *See Arnold v. White House*, 25-1695, 2025 WL 2105568, at *2 (D.D.C. July 28, 2025) (dismissing amended complaint because it was "substantially similar to [the] original complaint," despite being meant to "cure[] the existing deficiencies"), *aff'd*, No. 25-5286, 2025 WL 3171730 (D.C. Cir. Nov. 13, 2025); *see also Tooley*, 586 F.3d at 1009–10 (holding that allegations of a purported "campaign of surveillance and harassment deriving from uncertain origins" are "patently insubstantial claims" subject to dismissal for lack of jurisdiction).  The Court thus declines to grant Mr. Kinney leave to amend. Because the Court dismisses the Complaint and denies Mr. Kinney's motion for leave to amend, the Government's motion to strike the Amended Complaint and Mr. Kinney's remaining motions are now moot.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment (ECF No. 5) is **DENIED**; Defendant's Motion to Extend *Nunc Pro Tunc* Time to Respond to Plaintiff's Motion for Default Judgment (ECF No. 12) is **GRANTED**, and Defendant's Response to Plaintiff's Motion for Default Judgment (ECF No. 14) is **DEEMED TIMELY FILED**; Defendant's Motion to Dismiss (ECF No. 13) is **GRANTED**; and Plaintiff's Motion for Leave to Amend (ECF No. 19) is **DENIED**. All remaining motions (ECF Nos. 8–11, 17, 18, 20, 24, 26, 28) are **DENIED** as **MOOT**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 23, 2026                                    RUDOLPH CONTRERAS
                                                        United States District Judge

10